# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO
_____

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                   Case No. CR 07-615 WJ

TOBY MARTINEZ and
SANDRA MARTINEZ,

     Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RELEASE OF PROPERTY AND ORDERING FURTHER SUBMSSIONS REGARDING  REQUEST FOR JONES HEARING

THIS MATTER comes before the Court upon a Joint Motion for Release of Property filed by Toby Martinez and Sandra Martinez on October 12, 2007 (**Doc. 94**), following oral argument.  Having considered the parties' briefs and the applicable law, I find that Defendants' motion is well-taken in part and not well-taken in part with regard to the validity of the restraining orders.  The Court defers ruling on whether Defendants are entitled to a <u>Jones</u> hearing to challenge those orders.

### BACKGROUND

The Government's First Superceding Indictment, filed on August 23, 2007 (Doc. 49) charges Mr. Toby Martinez with conspiracy to commit mail fraud and money laundering under 18 U.S.C. § 1341 and 18 U.S.C. § 1956(a)(1), and the substantive crime of mail fraud.  Ms. Sandra Martinez was charged with the same conspiracy, and with the substantive crime of money

laundering.[1]  Defendants Toby Martinez and Sandra Martinez ("Defendants") seek an order from the Court vacating restraining orders on certain property and assets which were obtained by the Government under 21 U.S.C. § 853, in connection with these charges.

Defendants contend that there is no legal authority to support the restraining orders; and even if there were, the particular assets at issue here are not subject to pretrial restraint.

## I.     The Assets

The restraining orders were obtained under 21 U.S.C. §853(3) on August 28, 2007, and addressed both directly forfeitable assets and the substitute assets.  The motion challenges the orders restraining the following assets:

(1)      USNMFCU 330221
(2)      USNMFCU 402750
(3)      USNMFCU 905993
(4)      The College Fund
(5)      2005 Lexus RX-330 Wagon
(6)      The Dakota Ridge House
(7)      The Childers House
8)      2003 Mercedes-Benz "E" Class Four-Door Sedan Model E-320

At the time the restraining orders were obtained, Account 330221 contained approximately $9,000.00; Account 402750 contained approximately $5329.00; Account 905993 contained $80,999.00; and the College Fund held approximately 55,000.00.  However, the Government states that the accounts had contained much larger amounts, and were dissipated prior to the time the assets were frozen: Account 330221 with a past total amount of $116,398.20; Account 402750 with $41,505.21 and Account 905993 with a past amount of $339,441.44.  It appears undisputed that the Bank Accounts contain some legitimate funds as well

_____

[1]  A Third Superceding Indictment was returned on January 10, 2008, without any changes relevant to the issues here.  Doc. 165.

as alleged illegal proceeds. According to the Government, Account 330221 received the majority

of the allegedly illegal proceeds from Smart Solutions, an alleged sham business which existed for

the sole purposes of receiving illegal proceeds of mail fraud and facilitating money laundering.

The College Fund was created with a $55,000.00 check from Account 330221.  The Lexus was

paid for with a check from that same Account.  The purchase of the Dakota house was made with

funds that the Government alleges are tainted.

The Childers House and the Mercedes are listed by the Government as "substitute assets,"

which, upon Defendants' conviction on the charges, would be forfeited in lieu of any of the

directly forfeitable assets that are "unavailable" under the forfeiture statute.

## II.      Forfeiture Statute

In relevant part, 21 U.S.C. § 853 provides the following:

**(a) Property subject to criminal forfeiture**
Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable
by imprisonment for more than one year shall forfeit to the United States, irrespective of any
provision of State law—
(1) any property constituting, or derived from, any proceeds the person obtained, directly or
indirectly, as the result of such violation;
(2) any of the person's property used, or intended to be used, in any manner or part, to commit,
or to facilitate the commission of, such violation . . . . .
**(e) Protective orders**
(1) Upon application of the United States, the court may enter a restraining order or injunction,
require the execution of a satisfactory performance bond, or take any other action to preserve the
availability of property described in subsection (a) of this section for forfeiture under this
section—
(A) upon the finding of an indictment or information charging a violation of this subchapter or
subchapter II of this chapter for which criminal forfeiture may be ordered under this section and
alleging that the property with respect to which the order is sought would, in the event of
conviction, be subject to forfeiture under this section . . .
**(p) Forfeiture of substitute property**
**(1) In general**
Paragraph (2) of this subsection shall apply, if any property described in subsection (a), as a result
of any act or omission of the defendant—

(A) cannot be located upon the exercise of due diligence;
(B) has been transferred or sold to, or deposited with, a third party;
(C) has been placed beyond the jurisdiction of the court;
(D) has been substantially diminished in value; or
(E) *has been commingled with other property which cannot be divided without difficulty.*
**(2) Substitute property**
In any case described in any of subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E) of paragraph (1), as applicable . . . .

21 U.S.C. § 853 (relevant portions, emphasis added).

## DISCUSSION

Defendants' argument is three-tiered:

(1)     The Comprehensive Forfeiture Act ("CFA"), pursuant to 21 U.S.C. § 853, only permits the restraint of assets arising out of offenses enumerated in the Drug Abuse Prevention and Control Act ("DAPCA"), and does not pertain to assets arising out of any of the offenses charged in the First Superceding Indictment;

(2)     The restraining orders which pertain to property identified by the Government as "substitute assets," are disallowed by Tenth Circuit case law; and

(3)     Even if the CFA does apply to the indicted offenses, it does not permit the restraint of any of the challenged property because such property has been "commingled with other property which cannot be divided without difficulty."

## I.     Legal Authority Behind Restraining Orders

Defendants challenge the legal authority behind the restraining orders.  21 U.S.C. §

853(e)(1)(A) allows the Government to request restraining orders for assets which are subject to

forfeiture under § 853(a).  They rely on the language in § 853(a) which applies the subsection to

violations of the  "Drug Abuse Prevention and Control" Act ("DAPCA") and the Controlled

Substances Act, is subject to criminal forfeiture.[2]  Thus, Defendants argue that because § 853 only

---

[2]  Section 853(a) specifically refers to violations of "this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year," meaning violations of DAPCA or the Controlled Substances Act, codified into subchapters I and II.

permits the restraint of assets arising out of offenses enumerated in DAPCA, and because none of the offenses charged in the First Superceding Indictment arise from drug abuse, §853(e)(1)(A) cannot provide authority for the restraining orders.

The Government contends that the restraint orders were legal because they were based on 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(b)(1), both of which incorporate § 853 for non-drug related crimes. Defendants pose a challenge to 28 U.S.C. § 2461, and 18 U.S.C. § 982(b), contending that both § 2461 and § 982 are purely "post-conviction" statutes, which don't incorporate pre-conviction seizure of assets.

A.    18 U.S.C. § 2461(c)

Section 2461, also known as the Civil Asset Forfeiture Reform Act ("CAFRA"), reads, in relevant part:

> (c) *If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized*, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure. If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to the Federal Rules of Criminal Procedure and section 3554 of title 18, United States Code. *The procedures in section 413 of the Controlled Substances Act (21 U.S.C. 853) apply to all stages of a criminal forfeiture proceeding*, except that subsection (d) of such section applies only in cases in which the defendant is convicted of a violation of such Act.

28 U.S.C. § 2461(c) (emphasis added).

Defendants cite to a Second Circuit case, U.S. v. Razmilovic, 419 F.3d 134 (2d Cir. 2005), which supports its position. Razmilovic held that CAFRA (i.e., § 2461) does not incorporate the pretrial restraining provision § 853(e).  Defendant relies on language in Razmilovic which notes that § 2561(c)'s  use of the term "forfeiture" cannot include pretrial

restraint.  However, as the Government notes, Razmilovic is not relevant because it was decided

prior to the 2006 amendment to § 2461(c).  The amendment, part of Pub.L. 109-177 (enacted

March 9, 2006), struck the phrase "upon conviction" from the statute and inserted language

plainly stating that the procedures of 21 U.S.C. § 853 "apply to all stages of a criminal forfeiture

proceeding," with the exception for subsection 853(d).  This clearly indicates congressional intent

to include 21 U.S.C. § 853(e) within 28 U.S.C. § 2461(c).  The few courts that have addressed

this issue have also acknowledged this legislative intent.  See, U.S. v. Wittig, 2004 WL 1490406

(D.Kan., 2004); U.S. v. Causey, 309 F.Supp.2d 917, 922 (S.D.Tex.,2004); U.S. v. Lewis, 2006

WL 1579855 (D.Minn., 2006).

B.      28 U.S.C. § 982(b)(1)

        Defendants claim that the restraining orders are not supported by 18 U.S.C. § 982(b)(1),

because there is no language in § 982 that allows for the restraint of assets.

        The relevant parts of 28 U.S.C. § 982 read as follows:

        (b)(1) The forfeiture of property under this section, including any seizure and disposition
        of the property and any related judicial or administrative proceeding, shall be governed by
        the provisions of section 413 (other than subsection (d) of that section) of the
        Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. §853).

        The Government relies on a Seventh Circuit case, U.S. v. Kirschenbaum, 156 F.3d 784

(7th Cir. 1998), which concluded, based on a statutory interpretation analysis, that § 982(b)(1)

incorporated the procedures under § 853(e).[3]  Other than Kirschenbaum, it appears that no other

---

        [3]  Defendants challenge Kirschenbaum because they say it was decided on a previous
version of § 982(b)(1) which specifically incorporated the pre-trial restraint provision, § 853(e),
but which no longer exists based on a 1998 amendment which removed reference to subsection
(e). Defendants fail to cite to the specific 1998 amendment on which they rely.  This Court's
review of previous versions of § 982(b) did not reveal any previous version of § 982(b) that
contained reference to subsection (e), or, for that matter, any 1998 laws (for example, Pub.L.105-

Court of Appeals has addressed the issue of whether § 982(b)(1) incorporates § 853(e).

However, lower courts that addressed the issue agree with the holding in Kirschenbaum.[4]

Therefore, based on the express language of these statutory provisions, as well as the rather

sparse case law on the subject, the Court rejects Defendants' argument that the restraining orders

were not legally authorized, and instead finds that both 28 U.S.C. § 2461 and 18 U.S.C. § 982

incorporate the forfeiture provisions and procedures set forth in § 853(e).

## II.    Pre-Conviction Restraint on Substitute Assets

Defendants argue that Tenth Circuit case law disallows restraining orders which pertain to

property identified by the Government as "substitute assets."   They rely on U.S. v. Jarvis, 499

F.3d 1196 (10th Cir. 2007), which was decided just a few days after the Court entered the Post-

Indictment restraining Orders. In that case, the Tenth Circuit Court of Appeals held that the

Government may not claim a pre-conviction interest in property identified as substitute property

under § 853(p). Other circuits have come to the same conclusion.[5]

Defendants' position is legally sound, but this is now a moot issue. The Government

---

318 and Pub.L. 105-184) which affected subsection (e) in one way or another. In fact,
Kirschbaum mentioned Public Law 105-184 in its decision, noting that although that law amended
18 U.S.C. § 982, "none of the amendments affect our analysis of the case." 156 F.3d at 789, n.1.

[4]  See, e.g.,  U.S. v. Lewis, 2006 WL 1579855 (D.Minn.  2006); U.S. v. Wingerter, 369
F.Supp.2d 799, 807 (E.D.Va.,2005); In re Restraint of Bowman Gaskins Financial Group, 345
F.Supp.2d 613, 624 (E.D.Va.,2004); In re Certain Assets of Petty, Jr., 2002 WL 1377707
(E.D.Tex.,2002) (citing to U.S. v. Floyd, 992 F.2d 498, 500-01 (5th Cir. 1993); U.S. v. Field,
867 F.Supp. 869, 870 (D.Minn.,1994); U.S. v. Wu, 814 F.Supp. 491, 492 & n.2 (E.D.Va.,1993).

[5]  See, e.g., U.S. v. Misla-Aldarondo, 478 F.3d 52, 75 (1st Cir. 2007); U.S. v. Parrett, 469
F.Supp.2d 489 (S.D.Ohio 2007); U.S. v. Ford, 64 Fed.Appx. 976 (6th Cir.2003); and U.S. v.
Floyd, 992 F.2d 498 (5th Cir.1993).

requested, and the Court granted, its motion to vacate the restraining orders regarding the

Mercedes sedan and the Childers house, both identified by the Government as properties that

would be considered "substitute assets" in lieu of directly forfeitable assets that are determined to

be "unavailable" under § 853(p)(1)(A)-(E).  See Docs. 125 & 131.  Therefore, this portion of

Defendants' motion will be denied as moot.

**III.     Restraint of Accounts as "Unavailable" Property Because They Are Commingled**

        Property listed under subsection (p)(1)(A)-(E) is unavailable for forfeiture.  Defendants

argument here is that all the assets at issue are commingled and "unavailable" under subsection

(p)(1)(A)-(E), and therefore not subject to restraint or protective orders under § 853(e).

Defendants contend that the houses and cars, or more specifically at this point, the Lexus and the

Dakota house, were bought with the allegedly commingled Bank Accounts, making them also

commingled properties.

        Defendants argue that assets which are "unavailable" for forfeiture under subsection (a)

(such as commingled property) cannot be subject to restraining orders under subsection (e). They

contend that reading the statute to allow this would be internally inconsistent and absurd.  Such a

reading, for example, would mean that the Government would be able to obtain restraint orders

on property that cannot be forfeited, or on properties that cannot possibly be restrained – if, for

example, a property that is placed beyond the Court's jurisdiction.  See § 853(p)(1)(C).

        The flaw with this argument is that Defendants conflate subsections (a) and (p) of the

forfeiture process under § 853(a).  They assume,  without any legal basis for doing so, that all of

the principal assets should be considered "commingled" and therefore "unavailable," at this point

in the case, instead of after the Government obtains a forfeiture judgment.  A reading of the case

law indicates that just as the Government must wait for a forfeiture judgment until it can claim an interest in substitute assets, Defendants must wait until (and if), the Government obtains a forfeiture judgment before the Court can consider whether a property is "unavailable" under § 853(p)(1).  See, e.g., Jarvis, 499 F.3d at 1204 (the United States does not have a ripened interest in § 853(p) substitute property until (1) *after the defendant's conviction* and (2) the court determines the defendant's § 853(a) forfeitable property is out of the government's reach for a reason enumerated in § 853(p)(1)(A)-(E)) (emphasis added); U.S. v. Misla-Aldarondo, 478 F.3d 52, 75 (1st Cir. 2007) (Government has burden to show that principal forfeitable assets are unavailable *"at the end of the trial"*) (emphasis added);  U.S. v. Bornfield, 145 F.3d 1123, 1138-39 (10th Cir. 1998) ("the implication is that [a forfeiture of substitute assets] order may commonly be entered *after the initial forfeiture has been determined*") (emphasis added).

Thus, in order to obtain pre-conviction restraint orders, the Government's sole burden is to show that the properties are forfeitable under 21 U.S.C. § 853(a).  At oral argument, the Government explained that the Martinez' ownership of some of the forfeitable assets overlap, with the three Bank Accounts and Lexus belonging to Mr. Martinez, and the three Bank Accounts and College Fund belonging to Mrs. Martinez.  Forfeiture of Mrs. Martinez' assets is based on 18 U.S.C. § 982 governing criminal forfeiture for money laundering, together with § 28 U.S.C. § 2461 which incorporates the forfeiture procedures of 28 U.S.C. § 853.  Forfeiture of Mr. Martinez' assets is sought under 18 U.S.C. § 981 governing civil forfeiture for mail fraud charges, together with 28 U.S.C. § 2461, which "bridges the gap" between civil and criminal forfeiture.

Property is forfeitable under § 982(a)(1) – and therefore under 28 U.S.C. § 853(a) – if it is "involved" in a money laundering offense, or if the property is "traceable to such property."

Likewise, property which represents or is traceable to gross receipts obtained, directly or indirectly, from mail fraud, is forfeitable under § 981(a)(1)(C) and (D).

The Government claims that the Bank Accounts received thousands of dollars in deposits of illegal proceeds from mail fraud and facilitating money laundering. The Lexus was allegedly purchased from the account receiving those proceeds. Even though the accounts were substantially dissipated by the time the restraining orders were obtained, the Government contends that it has sufficiently shown that the funds initially in those accounts were involved in, or traceable to, money laundering offenses.

Defendants' core challenge to the forfeitability of these assets is that, because legitimate funds were deposited in these accounts along with allegedly tainted funds, the Government cannot seize the accounts, or the items which allegedly were purchased with funds from those accounts. Defendants rely on a Third Circuit case, U.S. v. Voigt, 89 F.3d 1050, 1087 (3rd Cir. 1996), which states that "the presence of one illegal dollar in an account does not taint the rest – as if the dollar obtained from the [offense conduct] were like a drop of ink falling into a glass of water." In Voigt, the Third Circuit Court of Appeals concluded that jewelry which defendant had purchased with funds from an account into which money laundering proceeds had been commingled with other funds, was not "traceable to" money laundering activity. The Third Circuit there held that on remand, the Government should be permitted to amend the judgment to "reflect that the jewelry is forfeitable as a substitute asset" to satisfy, in part, the $1.6 million in criminal forfeiture. 89 F.3d at 1088. The problem in Voigt was the "process" by which the Government seized the jewelry. Although the Government was not allowed to directly forfeit it as "traceable" to the money laundering offense, the end result was forfeiture of the jewelry as "substitute" proceeds.

10

Voigt is simply not applicable to the analysis before the Court here. The central inquiry in Voigt was whether the jewelry should have been considered "traceable" to the money laundering in the first place.  However, the Government already had a forfeiture judgment, at which point the inquiry became whether the jewelry was forfeitable or "unavailable" under the forfeiture provisions.  There is no forfeiture judgment in the instant case.  Thus, it cannot be determined at this point whether any of the Martinez' assets have become "unavailable."

Moreover, the holding in Voigt was criticized by a subsequent Third Circuit case, U.S. v. Stewart, 185 F.3d 112 (3rd Cir. 1999), cert. den., 28 U.S. 1063 (Dec.1999). In Stewart, the Government had traced $3 million to an account which previously contained only $160,000, and sought to forfeit directly the remaining $2.6 million. The district court concluded that the money could be forfeited only under the substitute asset provision.  On appeal, the question was whether the Government could forfeit directly tainted funds from an account that had been frozen from the time of the illegal transfer but that also contained untainted money.  The Third Circuit reversed the district court, holding that the $2.6 million was directly forfeitable as traceable assets, even though the money was held in an account that contained untainted funds.  The court acknowledged that Voigt would have held otherwise, pointing to language in Voigt which indicated that the substitute asset provision would have to apply to commingled cash even if "one readily could separate out the amount subject to forfeiture." 185 F.3d at 129 (citing Voigt, 89 F.3d at 1088 n.24).  The Third Circuit in Stewart rejected that language as dicta, and restricted Voigt to its facts.

The reasoning and holding Stewart is applicable to this case, including a rejection of Voigt's analysis and holding.  The funds in the frozen accounts are not "commingled" within the

11

meaning of § 853.  Defendants' "drop of ink" analogy does not work here because the Government seeks only to forfeit the "ink," and not the "water." For example, the Government has allegedly traced $224,950.70 in transfers from a sham business to one of the accounts in which only $9,000.00 remained at the time the account was restrained.  Just as the Government in Stewart was entitled to forfeit only the amount that was directly traceable to the offense conduct, here the Government would be entitled to $9,000.00 of the $224,950.70 which it alleges is directly traceable to money laundering and mail fraud.  No reading of any of the forfeiture provisions requires that the Government trace every dollar, or prove serial numbers for currency which it alleges is directly traceable to, or involved in, the offense conduct.  See, e.g., Bornfield, 145 F.3d 1123, 1138-39 (10th Cir. 1998) (although corpus of money laundering offense was not in defendant's account at time of indictment, any money contained in that account was subject to forfeiture solely under a facilitation theory); U.S. v. Rodriguez, 278 F.3d 486, 491 (5th Cir. 2002) (Government is under no duty to trace the individual funds, nor is it necessary that a transaction be examined wholly in isolation "if the evidence tends to show that it is part of a larger scheme that is designed to conceal illegal proceeds"); U.S. v. Braxtonbrown-Smith, 278 F.3d 1348, 1353 (C.A.D.C. 2002) (complete tracing not required as long as individual transaction includes illegal proceeds in some amount).

The same reasoning extends to the Lexus.  Because the accounts subject to the restraining orders are not "commingled" accounts, I find the Government is not seeking to forfeit property purchased with "commingled" funds.

Accordingly, the Court rejects Defendants' argument that the assets at issue here are "unavailable" for forfeiture under § 853(a), and cannot be subject to restraining orders under

subsection (e).

## IV.   **Whether Defendants are Entitled to a Jones Hearing**

Because the Court rejects all of Defendants arguments, the Court must consider whether Defendants are entitled to a factual inquiry into the propriety of the restraining orders.  A Jones hearing is an adversarial hearing at which the Government must establish probable cause to believe that the restrained assets are traceable to the underlying offense.  See, U.S. v. Jones, 160 F.3d 641, 647 (10th Cir. 1998).

Due process does not automatically require a hearing.  A defendant is entitled to a Jones hearing if he or she can show: (1) that they have no assets, other than those restrained, with which to retain private counsel and also provide for themselves and family.  If they cannot show this, then the balance tips against a post-restraint hearing defendant fails to persuade the court on this point, then the balance tips against a post-restraint hearing.  Defendants must also show: (2) a bona fide reason to believe the grand jury erred in determining that the restrained assets constituted, or are derived, directly or indirectly, from gross proceeds traceable to the commission of the offense. 160 F.3d at 647 (citing 18 U.S.C. § 982(a)(6)).[6]  Both of these requirements must be met.

The Court is satisfied that Defendants have met the first requirement.  See, Exs. A-C (attached to Jt. Mot. for Release of Prop.).  The current means of living for both Defendants have had an impact on Defendants' ability to provide financially for themselves and their family, as well as their ability to continue with private counsel, who had been retained previously.  However, the

---

[6]  The burdens are different for the two requirements.   A defendant has the burden of persuasion on the first requirement, but only a burden of production on the second. 160 F.3d at 647.

Court is not convinced that Defendants have met the second requirement.  Their contention, even if true, that legitimate funds are contained within the Bank Accounts, does not constitute a bona fide reason to believe the grand jury erred in its determination.

At oral argument, the Court was informed by the Government that certain documents are available for the Court's review *in camera* concerning the basis for the restraining orders which had been submitted for the grand jury's review.  The Government shall submit for the Court's *in camera* review any pertinent documents relating to the second <u>Jones</u> factor, by **<u>Monday, March 24, 2008.</u>**  The Court will review these documents, and hold a telephone conference afterward, notifying counsel whether Defendants are entitled to a <u>Jones</u> hearing.  Defendants may, but are not required to, submit further documentation or argument that is confined to the issue of whether the grand jury erred in determining that the restrained assets constituted, or are derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.  Should Defendants wish to file further submissions, the deadline for all submissions on this issue is also **<u>Monday, March 24, 2008.</u>**

## CONCLUSION

The Court finds that the restraining orders pertaining to the Bank Accounts, the Dakota house, and the Lexus, are supported by legal authority.  Thus, Defendants' motion is denied on this ground.  However, under Tenth Circuit law, the Government has no legal authority to restrain the substitute assets (the Childers house and the Mercedes sedan).  Because these restraining orders have already been vacated on the Government's motion, this argument is moot.      There is no merit to Defendants' argument that the assets are "commingled," and therefore protected from pre-conviction restraint.  I conclude that the assets are not "commingled," and further, that

14

the inquiry into whether certain assets are "unavailable" under the forfeiture statute is made post-conviction, and not until the Government obtains a forfeiture judgment.

The Court will defer a decision with regard to whether Defendants are entitled to a <u>Jones</u> hearing pending the Court's review of arguments and documentation from the parties by Monday, March 24, 2008.

_____
UNITED STATES DISTRICT JUDGE