## IN THE DISTRICT COURT OF THE UNITED STATES

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                             07-CR-615 WJ

TOBY MARTINEZ,
RAUL PARRA,
MANNY ARAGON
SANDRA MARTINEZ,
a/k/a "Sandra Mata," and
MICHAEL MURPHY,

        Defendants.

**SEALED MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS,
OR IN THE ALTERNATIVE, TO SUPPRESS EVIDENCE
AND
REQUEST FOR HEARING PURSUANT TO *KASTIGAR v. UNITED STATES***

THIS MATTER comes before the Court upon Defendant Toby Martinez' Motion to Dismiss, or in the Alternative, to Suppress Evidence, and Request for Hearing Pursuant to Kastigar v. United States,[1] filed on June 24, 2008 **(Doc. 354)**.  Having considered the parties' briefs and the applicable law, I find that Defendant's motion is not well-taken and will be denied.

On December 22, 2005, co-Defendants Toby and Sandra Martinez and counsel Billy Blackburn, met at the United States Attorney's Office.  Also present at the meeting were AUSA Jonathan Gerson, FBI Special Agent Leroy Chavez and Special Agent Drew McCandless.  The parties signed a proffer agreement, which states:

                        PROFFER AGREEMENT

---

[1] 406 U.S. 441(1972).

>With respect to the meeting of Toby Martinez and Sandra Martinez ("Clients") and their attorney, Billy Blackburn, Esq., with Special Agents Leroy Chavez and Drew McCandless of the Federal Bureau of Investigation, and Assistant United States Attorney Jonathon Gerson, at the United States Attorney's Office for the District of New Mexico ("the Office"), held on December 22, 2005 ("the meeting"), the following understandings exist:
>
>(1) In any criminal prosecution brought against Client by the Office, the Office will not offer in evidence in its case-in-chief any statements made by Client at the meeting, except in a prosecution for false statements, obstruction of justice or perjury.
>
>(2) Notwithstanding item (l) above: (a) the Office may use information derived directly or indirectly from the meeting for the purpose of obtaining leads to other evidence, which evidence may be used in any prosecution and sentencing of Client by the Office; (b) the Office may use statements made by Client at the meeting and all evidence obtained directly or indirectly therefrom for the purpose of cross-examination should Client testify, or to rebut any evidence offered by or on behalf of Client in connection with the trial and/or the sentencing, should any prosecution of Client be undertaken.
>
>(3) It is further understood that this agreement is limited to the statements made by client at the meeting and does not apply to any oral, written or recorded statements made by Client at any other time. No understandings, promises, or agreements have been entered into with respect to the meeting other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties.

Doc. 417-2.

Following the completion of the proffer agreement, Toby Martinez ("Defendant" hereinafter) made a statement admitting the details of the conspiracy related to the Metro Court from which he had received large sums of money. Defendant also provided his home computer to the agents and discussed some of the documents retained in the computer.

As part of the Government's investigation, witnesses were called before federal grand juries sitting in Albuquerque, New Mexico in June and July of 2006, and January and February of 2007. A federal grand jury sitting in Albuquerque returned the initial Indictment in this case which was filed on March 28, 2007. (Doc. 1). The grand jury charged Toby Martinez, Raul Parra, Manny Aragon and Sandra Martinez with conspiracy to commit mail fraud and money

laundering in violation of 18 U.S.C. § 371, mail fraud in violation of 18 U.S.C. §§ 1341 and 1346, and money laundering in violation of 18 U.S.C. §§ 1956 and 1957, all in connection with the construction of the Bernalillo County Metropolitan Courthouse. On August 23, 2007, the grand jury added Michael Murphy as a defendant in the First Superseding Indictment [Doc. 50]. On October 23, 2007 the Second Superseding Indictment was issued and on January 10, 2008 a newly empaneled grand jury issued the Third Superseding Indictment. (Docs. 103, 166 respectively). Before this initial Indictment was filed, three co-conspirators, Marc Schiff, Kenneth Schultz and Manuel Guara, entered guilty pleas.

Defendant contends that the Government violated the proffer agreement by presenting his immunized statements to the grand jury. Defendant further contends that the agreement, if interpreted as broadly as the Government suggests, violates Defendant's Fifth Amendment and due process rights. The Government argues that Defendant's motion should be denied and no Kastigar hearing should be scheduled because the United States fully complied with the proffer agreement.

## I.     Kastigar Hearing not Required Because Testimony not Compelled

Kastigar holds that in any criminal prosecution of a person who has been granted immunity to testify, the prosecution has the burden of proving affirmatively that evidence proposed to be used is derived from a legitimate source wholly independent of compelled testimony. 406 U.S. at 460.[2]

As the Government notes, all of the cases relied on by Defendant, including Kastigar,

---

[2] Kastigar also discussed the protections afforded by the Fifth Amendment with regard to the Government's ability to compel the testimony of a witness unwilling to incriminate himself.

deal with compelled testimony, such as testimony ordered pursuant to 18 U.S.C. § 6002. In this case, Defendant cannot show that he has been compelled to provide a statement under grant of use immunity about the matter relevant to his prosecution. See, e.g., U.S. v. Beery, 678 F.2d 856, 863 (10th Cir. 1982) (issue of whether defendant had been required to testify requiring remand). Thus, the Court agrees with the Government that a Kastigar hearing is not required here,[3] and Defendant's motion for a Kastigar hearing is denied.

## II.   Validity of Proffer Agreement

Defendant also contends that his statements, subsequent cooperation and his computer must also be suppressed because they were obtained in violation of the due process clause. Defendant claims that the statements he made to the FBI Special Agents were involuntary because they were obtained by trickery and deception. See, United States v. McCurdy, 40 F.3d 1111, 1119 (10th Cir. 1994) (factors that may indicate a statement is involuntary include: physical mistreatment, use of violence, threats, threats of violence, promises or inducements, deception or trickery and the physical and mental condition and capacity of the defendant).

This argument essentially asserts a due process violation, and centers around the validity of the proffer agreement. There is no prohibition against the use of such informal immunity agreements, such as the one entered into by the Government and Defendant, regardless of whether it offers the full immunity provisions offered by 18 U.S.C. § 6002. U.S. v. Skalsky 857 F.2d 172, 175 (3rd Cir. 1988) ("Although 18 U.S.C. § 6002 sets forth the procedure for granting

---

[3] The Court also agrees that Defendant's use of the term "compel" does not comport with the legally specific use of the word in Kastigar and the other cases relied on by Defendant. As the Government notes, Defendant may have been compelled by the facts but not by the law. Resp. at 9, n.7.

a witness formal immunity, the Department of Justice and the federal courts have consistently approved the use of 'informal immunity' agreements"); United States v. Plummer, 941 F.2d 799, 805 (9th Cir. 1991) (acknowledging use of informal immunity terms even though use and derivative use immunity under 18 U.S.C. § 6002 is "much more common than informal immunity"). For example, similar to the proffer agreement in this case, in U.S. v. Dortch, the Seventh Circuit approved of a proffer agreement which contained a prohibition against use of defendant's statement against him during government's case in chief. The court there noted that the case in chief limitation was "the only limitation on the use the government make of [defendant's] proffer agreement." 5 F.3d 1056, 1068 n.9 (7th Cir. 1993).

Defendant advances the proposition that the Government engaged in trickery and deception to compel Mr. Martinez to provide information, then turned on him by taking measures which led to his indictment. Defendant also claims that the proffer agreement promises full use immunity.

This argument fails for several reasons. There is no evidence but that Defendant entered into a voluntary, counseled, written informal limited immunity agreement with the Government. The notion that Defendant was an unsophisticated layperson who was duped into signing this agreement is absurd. Defendant was represented by his very able counsel, Billy Blackburn, during the formation and signing of the proffer agreement.

Further, informal immunity agreements are contractual in nature and are governed by ordinary standards of contract law. U.S. v. Hembree, 574 F.2d 314, 317 (10th Cir. 1985) (citing U.S. v. Feinberg, 631 F.2d 388, 390 (5th Cir. 1980); U.S. v. Chiu, 109 F.3d 624, 625 (9th Cir. 1997) (proffer agreements are analogous to plea agreements and informal immunity agreements,

and are resolved by application of contract principles).[4] The language of the proffer agreement is clear on its face. Defendant claims that the proffer agreement promised use immunity. However, the plain language of the agreement says otherwise. In paragraph (1) of the agreement, the Government agreed not to use Defendant's statements in its case in chief, with exceptions for prosecution for false statements, obstruction of justice and perjury. The plain language of this section does not prohibit the Government from using the statements for any other purpose.

Defendant claims that the language of the proffer agreement is co-extensive with the scope of the immunity statute found at 18 U.S.C. § 6002, which includes use and derivative immunity. Mot. at 7. However, the plain language of paragraph (2) of the proffer agreement clearly states that the agreement does not offer derivative immunity. In fact, it affirmatively states that the Government "*may use* information derived directly or indirectly from the meeting for the purpose of obtaining leads to other evidence, which evidence may be used in any prosecution and sentencing of Client by the Office. . . ." (Doc. 417-2) (emphasis added).

Defendant also contends that the Government made numerous verbal promises contingent on Defendant's cooperation, which the Government is now shirking by relying on the proffer agreement. Here again, the proffer agreement in this case states in the third paragraph that: "no understandings, promises, or agreements . . . will be entered into unless in writing and signed by all parties. Thus, the language of the agreement states clearly that the totality of any reassurances or promises was reduced to the language contained in the agreement.

---

[4] See also U.S. v. Pielago, 135 F.3d 703, 709 (11th Cir. 1998); U.S. v. Liranzo, 944 F.2d 73, 77 (2d Cir.1991); U. S. v. Plummer, 941 F.2d 799, 803 (9th Cir.1991) (informal immunity agreement to be interpreted like a contract); U.S. v. Luloff, 15 F.3d 763, 766 (8th Cir. 1994) (parties contract only for the immunity regarding specific subjects and dates provided, and no more).

Defendant urges that the Court interpret the ambiguous terms of the immunity agreement against the Government as the drafter, and according to Defendant's reasonable understanding of its terms.  See U.S. v. Scott, 469 F.3d 1335, 1338 (10th Cir. 2006) (court must interpret plea agreement according to defendant's reasonable understanding of its terms); U.S. v. Rodriguez-Rivera, 518 F.3d 1208, 1213 (10th Cir. 2008) (court must construe ambiguities in plea agreement against Government as drafter).

Defendant's position is untenable. The Court finds that the language contained in the proffer agreement is not ambiguous as to any of its provisions.  For example, despite Defendant's purported understanding of the agreement to afford the same immunity as set forth under 18 U.S.C. § 6002, the agreement's language provides only an unambiguous limited use immunity agreement.  Defendant claims that it is unreasonable to conclude that, in making a statement and presenting evidence pursuant to the immunity agreement in this case, Mr. Martinez waived his right to present any defense.  This is not a reasonable understanding of the agreement when it is directly contradicted by the language in the agreement, which expressly allows the Government to rebut any evidence offered by or on behalf of client in connection with the trial.  It is even more difficult to accept Defendant's premise of a misunderstanding of the agreement when Defendant's very capable counsel was present during the negotiation and signing of the agreement.

Accordingly, Defendant's motion to suppress evidence on the basis that Defendant's due process rights were violated in the formation and execution of the proffer agreement, and in the subsequent statements given, will be denied.

**III.    Whether Government Violated Agreement**

Having determined that the proffer agreement is valid, the next inquiry is whether the Government violated the terms of the agreement. Defendant contends that the Government violated the proffer agreement by presenting the immunized information to the grand jury. The remedy for breach of a contractual immunity agreement is dismissal of the indictment. Plummer, 941 F.2d at 805.

The Government claims that under the written agreement between the parties, the United States was fully within its rights to present any or all of the Defendant's statement and anything derived from that statement to the grand jury. The Court agrees with the Government. For Defendant to be correct in its position, the Government's presentation to the grand jury must be considered the Government's case in chief. However, Defendant offers no legal support for such a theory, and the Court is not aware of any authority in support of this theory.

In contrast, according to Black's Law Dictionary 207 (7th ed. 1999), the phrase "case in chief" is defined as either (1) "[t]he evidence presented at trial by the party with the burden of proof" (2) "[t]he part of a trial in which a party presents evidence to support its claim or defense." The phrase "grand jury" is defined as "[a] body of . . . people who are chosen to . . . decide whether to issue indictments" in ex parte proceedings. Id. at 706.

Paragraph (1) of the proffer agreement prohibits the Government from using Defendant's statements in its case in chief, with exceptions for prosecution for false statements, obstruction of justice and perjury.[5] Thus, any other use is not precluded, including use in a grand jury

---

[5] Paragraph (2) of the agreement further allows the Government to make use of all of Defendant's statements, including information derived from those statements, for purposes of cross-examination (if Defendant testifies), or for rebuttal in connection with the trial. What opens the door to use of the statement for rebuttal at trial is an issue that cannot be addressed before it occurs – namely, at trial. The Court will decide such matters at that time.

proceedings. Such provisions have been upheld in other cases. For example, in U.S. v. Chiu, 109 F.3d 624, 626 (9th Cir. 1997), the Ninth Circuit concluded that the Government's use of defendant's statements to prepare witnesses comported with terms of proffer agreement where the terms of the agreement made clear that it could use the information gained during the proffer session in almost any way except by offering defendant's statements as evidence in the Government's case-in-chief. In U.S. v. Dortch, the Seventh Circuit approved of a proffer agreement which contained a prohibition against use of defendant's statement against him during Government's case in chief, noting that the case in chief limitation was "the only limitation on the use the government make of [defendant's] proffer agreement." 5 F.3d 1056, 1068 n.9 (7th Cir. 1993).

Accordingly, Defendant's motion to dismiss the indictment on the basis that the Government violated the proffer agreement by presenting immunized information to the grand jury, is denied.

## Conclusion

In sum, the Court concludes:

(1) that a Kastigar hearing is not required because Defendant's statements does not constitute "compelled" testimony";

(2) Defendant's due process rights were not violated in the formation and execution of the proffer agreement, or in the subsequent statements given; and

(3) the Government did not violate the proffer agreement by presenting immunized information to the grand jury.

**THEREFORE,**

**IT IS ORDERED** that Defendant Toby Martinez' Motion to Dismiss, or in the Alternative, to Suppress Evidence, and Request for Hearing Pursuant to Kastigar v. United States **(Doc. 354)**, is hereby DENIED, for reasons set forth in the above Memorandum Opinion.

_____
UNITED STATES DISTRICT JUDGE