# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

UNITED STATES OF AMERICA,

                Plaintiff

v.                                                     No. CR 07-615 WJ

TOBY MARTINEZ,

                Defendant,

and

PUBLIC EMPLOYEE RETIREMENT
ASSOCIATION OF NEW MEXICO AND
NATIONWIDE RETIREMENT SOLUTIONS,

                Garnishees.

## MEMORANDUM OPINION AND ORDER
## ON THE GOVERNMENT'S AND DEFENDANT'S OBJECTIONS
## TO GARNISHEES' ANSWERS TO WRITS OF GARNISHMENT

THIS MATTER is before the Court on the Writs of Garnishment filed on July 28, 2014 (**Docs. 941, 942**); the answer filed by Garnishee Public Employee Retirement Association of New Mexico ("PERA") on August 7, 2014 (**Doc. 945**); the answer filed by Garnishee Nationwide Retirement Solutions ("Nationwide") on August 15, 2014 (**Doc. 946**); the Government's objections to the Garnishees' answers (**Docs. 947, 950**); Defendant Toby Martinez's objections to the Garnishees' answers (**Doc. 953**); and all responsive briefing thereto. Having reviewed the parties' filings and the applicable law, the Court sustains in part the Government's objections and overrules Defendant Toby Martinez's objections.

**BACKGROUND**

In 2009, Defendant Toby Martinez ("Defendant") entered a plea agreement in the infamous Metropolitan Courthouse corruption case. As part of his judgment, and pursuant to the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, the Court ordered Defendant to pay restitution in the amount of $2,710,818.66, including $541,370 for which he was jointly and severely liable with co-defendant Manny Aragon. *See* **(Doc. 827)**.

Not long after Defendant's release from prison in 2013, the United States Probation Office filed a report noting that Defendant had not sought employment and had failed to make any restitution payments. At a hearing in February 2014, the Court directed Defendant to follow through with reasonable employment prospects and to not encumber his PERA account in any way. **(Doc. 936)**. The Government asserts, and Defendant does not dispute, that only a small portion of Defendant's restitution obligations has been paid.[1] On July 28, 2014, following application by the Government, the Court filed Writs of Garnishment against Defendant's properties held by PERA and by Nationwide.

In its answer, PERA concedes that it has custody, control, or possession of a defined benefit retirement account with accumulated contributions owned by Defendant in the amount of $147,291.71. However, PERA also claims an exemption on the basis that Defendant's account "is not in pay status." **(Doc. 945)**.  The Government objects, arguing that PERA has not claimed a valid exemption to garnishment. **(Doc. 947)**.

Nationwide also answered, noting that it has custody, control, or possession of a "State of New Mexico 457(b) Deferred Compensation Plan" owned by Defendant and valued at

---

[1] The Clerk of the Court has provided reports to the Court showing that as of November 13, 2014, Defendant has paid $3,021.13 toward his individual restitution obligations, and Manny Aragon has paid $70,185.38 of the restitution for which he and Defendant are jointly and severally liable. The Court takes judicial notice of this documentation.

$326,433.05 as of August 11, 2014. Although it does not claim an exemption, Nationwide seeks to hold onto a "mandatory 20% withholding [to be] paid to the IRS." (**Doc. 946**). The Government, apparently misinterpreting Nationwide's answer, filed an objection in which it insists that the company has not claimed a valid exemption. (**Doc. 950**). Nationwide later filed a brief elaborating on its position. (**Doc. 962**).

Defendant filed several objections to the Garnishees' answers on September 23, 2014. Defendant specifically objects that his wife had not received proper notice despite her community property interest in the accounts, that an ERISA anti-alienation statute prevents the Government from garnishing the accounts until they are in pay status, that only 25% of his funds may be garnished once the accounts are in pay status,[2] and that the Court should apply equitable principles to quash the writs.

Pursuant to 28 U.S.C. § 3205(c)(5), the Court set a hearing for November 5, 2014. At the hearing, the Government withdrew its objection to Nationwide withholding 20% of the account funds as statutorily required for tax purposes. PERA also argued that 20% of the funds it holds should be withheld and forwarded to the Internal Revenue Service, and the Government did not object. PERA further clarified that it is not claiming an exemption from garnishment, but it argued that state laws and regulations prevent it from paying in full on a writ of garnishment issued by a federal court unless the account in question is in pay status. Next, Defendant argued again that the ERISA provision prevents collection in full of the money in his accounts and that garnishment of the full sums now would cause him an inequitable tax burden. Finally,

---

[2] A plan is in "pay status" if a participant or beneficiary is receiving benefits. *E.g.*, 29 U.S.C. §§ 1085(i)(6), 1421(b)(6).

Defendant's wife Sandra Martinez, appearing *pro se*,[3] asserted a community property interest in the accounts and joined in Defendant's objections.

## LEGAL STANDARD

Upon sentencing, the Court must order a convicted criminal defendant to make restitution to his victims if the MVRA applies, as it does here. 18 U.S.C. § 3663A(a)(1). An order of restitution may be enforced "by all . . . available and reasonable means." 18 U.S.C. § 3664(m)(1)(A)(ii); *see also* 18 U.S.C. § 3613(f). The Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3001 *et seq.*, is the "available and reasonable mean[]" used by the Government here. The FDCPA provides several remedies for enforcement of a restitution order, including garnishment. *See* 28 U.S.C. §§ 3202(a), 3205(a). "Notwithstanding any other Federal law," a restitution order "may be enforced against all property or rights to property of the person fined," subject to certain exceptions. 18 U.S.C. § 3613(a).

After the Government applies for a writ of garnishment and serves notice and a copy of the writ on the judgment debtor and the garnishee, *see* 28 U.S.C. §§ 3202(c), 3205(c)(3), the garnishee must file an answer describing any nonexempt property belonging to the debtor that is under the custody, control, or possession of the garnishee, *see id.* § 3205(c)(4). The debtor or the Government may then file written objections to the garnishee's answer and request a hearing. *Id.* § 3205(c)(5). "The party objecting shall state the grounds for the objection and bear the burden of proving such grounds." *Id.*

## DISCUSSION

Both the United States and Defendant filed objections to the Garnishees' answers, and Sandra Martinez raised objections at the hearing. The Court considers the Government's objections before proceeding to those raised by Defendant and his wife.

---

[3] The Court previously denied Sandra Martinez's request for the appointment of counsel. *See* **(Doc. 966)**.

## I.      Tax Withholding

Nationwide claimed that it is required by federal law to withhold 20% of any of Defendant's funds under its control for payment of tax obligations to the Internal Revenue Service. At the hearing, PERA made the same argument with respect to Defendant's funds under its control. Defendant also adopts the Garnishees' argument in his objections. *See* **(Doc. 953)**, at 9.

Although the Government initially objected to this argument, it withdrew this objection at the hearing. The Court believes that the request by PERA and Nationwide is proper. *See* 26 U.S.C. § 3405(c)(1)(B), (d) (discussing withholding requirements and liability with respect to eligible rollover distributions and § 457(b) plans); 26 C.F.R. § 1.402(c)-2, Q-3 (May 12, 2014) (treating funds used to pay for tax obligations to the credit of an employee as eligible rollover distributions); *see also* 18 U.S.C. § 3613(c) (providing that orders of restitution are treated as a lien on property "as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986"). The Court's order will therefore reflect that upon garnishment of Defendant's properties, the Garnishees shall withhold 20% of the value of the funds for tax purposes as required by law.

## II.     PERA Account Pay Status

In its answer, PERA claimed as an exemption that "[Defendant's] account is not in pay status." In an attachment, PERA explained that state law prohibits the garnishment of its accounts in most cases. Although it acknowledged that federal laws preempt this prohibition in certain cases, such as when it receives an order of garnishment for restitution in a federal criminal case, it argues that this preemption only applies "if the account is in pay status, i.e. if the

member has terminated employment and requested a refund of contributions, or if a pension is payable." *See* N.M. ADMIN. CODE 2.80.211.8(H).

The Government objected, arguing that only certain properties are exempted from garnishment and that PERA's claim does not fall under any of these exemptions. The Government has the better of this argument. "Notwithstanding any other law of the United States . . ., no property or rights to property shall be exempt from levy other than the property specifically made exempt by subsection (a) [of the same statute]." 26 U.S.C. § 6334(c) (tax levies); *see also* 18 U.S.C. § 3613(c) (applying the standards for tax levies to orders of restitution). The only potential exemptions for pensions specifically enumerated in § 6334(a) are limited to specific pensions that do not apply here. *See* 26 U.S.C. § 6334(a)(6). No exemption is listed for public employee pensions, let alone those that are not in some sort of pay status.

Other courts have very strictly construed § 6334(c) to allow for levies against pensions, federal or state, that are not specifically exempt under § 6334(a). *See, e.g.*, *Shanbaum v. United States*, 32 F.3d 180, 183 (5th Cir. 1994) (ERISA qualified pension plan); *United States v. Citigroup Global Mkts., Inc.*, 569 F. Supp. 2d 708, 710-11 (E.D. Tex. 2007) (state retirement plan, despite exemption claimed under state law); *In re Fink*, 153 B.R. 883, 886 (Bankr. D. Neb. 1993) ("Exemptions under state law are not valid against a tax lien except to the extent provided by 26 U.S.C. § 6334(a)."). The Court finds these authorities to be persuasive in the garnishment context. *See* 18 U.S.C. § 3613(c). PERA's claimed exemption under state regulations cannot survive if state statutes cannot create such an exemption. *See Citigroup*, 569 F. Supp. 2d at 710-11; *In re Fink*, 153 B.R. at 886.

Despite the arguments put forth in its answer, PERA stated at the hearing that it is actually not seeking an exemption but that it nonetheless must abide by its own regulations in

paying out the funds. However PERA phrases its position, the Government is permitted to garnish "all property and rights to property of the person fined," *see* 18 U.S.C. § 3613(c), and PERA provides no authority to suggest that it may withhold any of Defendant's property or rights to property in the face of federal statutes to the contrary. Accordingly, the Government's objection to PERA's answer is sustained, and the Government may garnish all of Defendant's property in PERA's custody, control, or possession, subject to the discussion above regarding tax withholdings.

### III.    Defendant's Objections

#### A. Notice to Defendant's Wife

Defendant claims that a combination of federal and state statutes required that his wife Sandra Martinez be provided notice of the Writs of Garnishment at the initiation of proceedings. 28 U.S.C. § 3202(c) mandates that notice and a copy of the garnishment application be served on the judgment debtor "and on each person whom the United States, after diligent inquiry, has reasonable cause to believe has an interest in property to which the remedy is directed." Further, "[c]o-owned property shall be subject to garnishment to the same extent as co-owned property is subject to garnishment under the law of the State in which such property is located." *Id.* § 3205(a). New Mexico is a community property state, *see* N.M.S.A. 1978, § 40-3-8(B), so a spouse has an interest in retirement funds such as those administered by PERA, *see Gilmore v. Gilmore*, 147 N.M. 625, 640 (Ct. App. 2009) (discussing "the PERA model" in the community-property context). Thus, Defendant argues, his wife holds an interest in the funds at issue and should have been served with the garnishment writs.

The Government argues that Defendant lacks standing to object on his wife's behalf. Although this argument appears to have merit, *cf. Ogden v. Fortress Grp. USA*, No. 1:09-mc-98,

2011 WL 2746103, at *1 (W.D. Mich. June 2011) (unpublished), Sandra Martinez appeared *pro se* at the hearing and joined in Defendant's objections, presumably including his objection as to notice. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citation omitted) (construing *pro se* filings liberally and holding than "to a less stringent standard than formal pleadings drafted by lawyers"). Any standing concerns as to this objection appear to have been resolved.

The Government next insists that "there is every reason to believe that Mrs. Martinez has had actual notice of these proceedings from the outset." Given the phrase "there is every reason to believe," the Court reads the Government's statement as conceding that it did not *actually* serve Sandra Martinez and that it means to say that she had *constructive* notice of the proceedings, presumably from service of notice on Defendant himself. The Government cites no cases discussing § 3202(c) that allow for or even mention constructive notice. At any rate, the Government's argument would appear to go against the plain language of the provision requiring service of particular documents "on each person" with an interest in the property.

Still, as the Government argues, any deficiency in service was cured by actual service of the required documents on Sandra Martinez on October 6, 2014.  Sandra Martinez has acknowledge that she received these documents no later than October 8, *see* (**Doc. 965**), giving her sufficient notice of the November 5 hearing. The Court therefore overrules Defendant's objection regarding notice.

B.  ERISA Anti-Alienation Provision

Defendant next argues that because ERISA states that "benefits provided under [a qualified pension] plan may not be assigned or alienated," 29 U.S.C. § 1056(d)(1), the funds in question may not be collected by the Government through garnishment until they are in pay status. This position is contrary to every circuit decision on the question. *See United States v.*

*DeCay*, 620 F.3d 534, 540-41 (5th Cir. 2010) (citing *Shanbaum*, 32 F.3d at 183); *United States v. Hosking*, 567 F.3d 329, 334-35 (7th Cir. 2009); *United States v. Novak*, 476 F.3d 1041, 1047-48 (9th Cir. 2007) (en banc); *United States v. Irving*, 452 F.3d 110, 128 (2d Cir. 2006). As each of these courts has concluded, ERISA's anti-alienation provision presents no barriers to garnishment under the FDCPA because 26 U.S.C. § 6334(c) states that no property is exempt from levy (or garnishment, *see* 18 U.S.C. § 3613(c)) except for certain enumerated exceptions, "[n]othwithstanding any other law of the United States." *See Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993) ("[T]he use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section.").

Defendant insists that a Tenth Circuit case decided on remand from the Supreme Court effectively creates a circuit split on this question and binds the Court to prohibit garnishment of these funds. *Guidry v. Sheet Metal Workers*, 39 F.3d 1078 (10th Cir. 1994) Specifically, the Tenth Circuit, sitting *en banc*, held that the anti-alienation language "protects ERISA-qualified pension benefits from garnishment only until paid to and received by plan participants or beneficiaries." *See Guidry*, 39 F.3d at 1083. However, *Guidry* is not on point. Despite its broad language, the court relied on the Supreme Court's earlier ruling in the same case holding that ERISA's anti-alienation provision applies unless Congress unambiguously makes an exception. *See Guidry v. Sheet Metal Workers*, 493 U.S. 365, 376 (1990). Congress passed § 6334(c) several years later, and each circuit that has considered the question since that time agrees that this language is an unambiguous signal that Congress intended to override the anti-alienation provision with respect to levies and garnishments. *See DeCay*, 620 F.3d at 540-41 (citation omitted); *Hosking*, 567 F.3d at 334-35; *Novak*, 476 F.3d at 1047-48; *Irving*, 452 F.3d at 128.

Further, every district court in the Tenth Circuit to have considered the question since the enactment of § 6334(c) agrees that, despite *Guidry*, § 6334(c) allows for the levy or garnishment of ERISA funds and overrides the anti-alienation statute. *See United States v. Gaddis*, No. CR-97-105-C, 2010 WL 908666, at *2 (W.D. Okla. Mar. 9, 2010) (unpublished); *United States v. Garcia*, No. 96-10049-01-JTM, 2003 WL 22594362 (D. Kan. Nov. 6, 2003) (unpublished); *United States v. Rice*, 196 F. Supp. 2d 1196, 1200-02 (N.D. Okla. 2002). The Court finds these circuit and district cases to be persuasive and adopts their reasoning.

In short, Defendant's reliance on ERISA's anti-alienation provision is without merit. The Court therefore overrules Defendant's second objection.

C.   Portion of Funds to Seize

Next, Defendant insists that the Government may seize only 25% of his PERA or Nationwide funds. He contends that because the Consumer Credit Protection Act limits garnishment to 25% of "disposable earnings," *see* 15 U.S.C. § 1673(a); 18 U.S.C. 3613(a)(3), the Government may only collect that portion of his monthly pension payments once his accounts enter pay status.

As the Government argues in response, the term "earnings" under § 1673(a) only touches on "periodic payments pursuant to a pension or retirement program," not the full values of the pension funds themselves. *See* 15 U.S.C. § 1672(a); *Kokoszka v. Belford*, 417 U.S. 642, 651 (1974). Defendant is not receiving periodic payments from the funds in question, and for the reasons outlined in the preceding sections, the Government is not required to wait for these funds to enter pay status under either ERISA or state law. As such, the 25% limitation does not apply to the garnishment efforts that the Government is pursuing.

D.  Tax Liability

Defendant argues for the first time in his reply brief that his potential tax liability for early withdrawal of his pension funds would be excessive. Although he acknowledges that PERA and Nationwide are each entitled to withhold 20% of the funds they control or possess to address federal tax liability, Defendant argued at the hearing that this will not relieve him of other tax burdens and penalties related to the garnishment of these funds, which he asserts could leave him liable for up to a 50% tax rate. Defendant complains that by allowing him to bear this tax burden, the Court will have effectively modified his judgment by imposing a new punishment.

Defendant's argument must fail. The Government may enforce a restitution order "against all property or rights to property of the person fined." 18 U.S.C. § 3613(a). Courts have interpreted this language broadly in the tax-levy context, which is analogous to garnishment under § 3613 and provides guidance in these cases. *See Kane v. Capital Guardian Trust Co.*, 145 F.3d 1218, 1222 (10th Cir. 1998) (citations omitted); *see also* 18 U.S.C. § 3613(c) (instructing courts to treat orders of restitution as "a lien in favor of the United States on all property and rights to property of the person filed as if the liability of the person fined were a liability for a tax assessed"); 26 U.S.C. § 6334(c) (noting the general rule that "no property or rights to property shall be exempt from levy" in tax cases). And in such cases, the Government "steps into the taxpayer's shoes" and "acquires whatever rights the taxpayer himself possesses." *See United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 725 (1985).

The parties do not dispute that Defendant himself has a "right to property" allowing him to withdraw his funds from his PERA and Nationwide accounts, even if doing so would subject him to an interest or tax penalty. *Cf. Kane*, 145 F.3d at 1222-23 (noting that a person seeking to

liquidate an IRA account may do so, "even if subject to some interest penalty"). Nor does Defendant cite any authority restricting the Government from "step[ping] into [Defendant]'s shoes" to take the same action, even if doing so subjects him to additional taxes or penalties. *See United States v. Dixon*, Civ. A. No. 03-20121-CM, 2007 WL 163245, at *2 (D. Kan. Jan. 18, 2007) (unpublished) ("[T]he court has not found any law that prohibits the garnishment of [retirement accounts] or that limits the amount garnished based on penalties or tax liabilities, and the parties have cited to none. Therefore, the court finds that the [retirement account] may be garnished without consideration of tax liabilities or penalties."); *see also Nat'l Bank of Commerce*, 472 U.S. at 725 ("[W]here . . . a taxpayer has the unrestricted right to withdraw funds from [an] account, 'it is inconceivable that Congress . . . intended to prohibit the Government from levying on that which is plainly accessible to the delinquent [defendant].'" (quotation omitted)); *Kane*, 145 F.3d at 1222-23; *United States v. Stahl*, No. 3:12-cv-2588-G (BN), 2013 WL 5596248, at *2 (N.D. Tex. June 14, 2013) (unpublished) ("It is undisputed that Defendant has the ability to withdraw a lump sum from his . . . account, and the fact that such withdrawal might result in substantial penalties and interests to Defendant . . . does not hinder [the Government]'s ability to garnish the account." (citing, *e.g.*, *Kane*, 145 F.3d at 1222-23)). The Government may therefore garnish Defendant's accounts without consideration of the impact of taxes or penalties on him, and as such the Court overrules this objection. *Accord Dixon*, 2007 WL 163245, at *2.

    E.  <u>Limitations in Judgment</u>

      Defendant argued at the hearing that the terms of his judgment prohibit the Government from garnishing his retirement accounts in full. The judgment specifically reads, "Restitution shall be paid in monthly installments beginning immediately of no less than 25% of the net

household income." This language, Defendant argues, does not allow for the garnishment sought

by the Government.

In response, the Government cited the Fifth Circuit case of *United States v. Ekong*, 518

F.3d 285 (5th Cir. 2007) (per curiam). There, as here, the defendant's restitution judgment

required only installment payments, and the defendant challenged the garnishment of his

retirement accounts. *See Ekong*, 518 F.3d at 286. As the court observed,

> "The [Mandatory Victim Restitution Act (MVRA)] provides the Government
> authority to enforce victim restitution orders in the same manner that it recovers
> fines and by all other available means" and, under 18 U.S.C. § 3613(a), it may
> collect "restitution 'in accordance with the practices and procedures for the
> enforcement of a civil judgment under Federal law or State law,' " including the
> [FDCPA]. *United States v. Phillips,* 303 F.3d 548, 550–51 (5th Cir. 2002). The
> attorney general is required by the MVRA to enforce victim restitution orders
> "aggressively." *Id.* at 551. There is nothing in the criminal judgment to the
> contrary.

*Id.* Other courts, including at least one circuit, have adopted this perspective in published or

unpublished rulings. *See, e.g.*, *United States v. Shusterman*, 331 F. App'x 994, 996-97 (3d Cir.

2009) (unpublished) (citing *Ekong*, 518 F.3d at 286); *United States v. Clayton*, 646 F. Supp. 2d

827, 835-36 (E.D. La. 2009).

The Court finds the Fifth Circuit's opinion to be extremely persuasive. Defendant's

objection on this point is thus overruled.

F.  Equitable Principles

As an equitable argument,[4] Defendant urges the Court to quash the writs for now, arguing

that the Government could potentially receive more money if it waits several years for his

accounts to enter into pay status. The Court rejects this argument. First, if the Government were

---

[4] The Government claims that the Court cannot consider equitable arguments in objections and hearings lodged
pursuant to 28 U.S.C. § 3202(d), as the cognizable topics for such hearings are strictly limited by that statute and do
not allow for the consideration of equitable principles. Even if this interpretation of § 3202(d) were correct,
Defendant filed his objections pursuant to 28 U.S.C. § 3205(c)(5), which does not include any subject-matter
limitations.

only allowed to garnish Defendant's monthly disbursements from his retirement accounts, it would appear to be limited to collecting only 25% of those disbursements. *See* 15 U.S.C. § 1673(a); 18 U.S.C. § 3613(a)(3). Although Defendant insists that the Government would still collect more money in the long run using this method, he fails to establish that this is true through either evidence or sound math.[5]

Second, and perhaps more pertinently, the Government is under no obligation to put off collecting the restitution that Defendant owes simply because it may hypothetically receive more money by choosing other collection methods. Instead, the Government is permitted to pursue restitution "by all . . . available and reasonable means." 18 U.S.C. § 3664(m)(1)(A)(ii); *see also id.* § 3613(f). Here, the Government has chosen to collect the funds it is owed via garnishment, a permissible means of enforcing the restitution order under the FDCPA. *See* U.S.C. §§ 3202(a), 3205(a). The Government has every right to choose this path, even if other more lucrative means might conceivably be available to it. Defendant's objection on equitable grounds is therefore overruled.

## IV.   Community Property

At the hearing, Sandra Martinez asserted her community property interest in the pensions at issue. In New Mexico, "community property" includes "property acquired by either or both spouses during marriage which is not separate property." N.M.S.A. 1978, § 40-3-8(B). There is no dispute that Defendant's PERA and Nationwide accounts are the community property of Defendant and his wife.

---

[5] At the hearing, Defendant proposed that immediate garnishment of his accounts would yield approximately $300,000 after appropriate IRS withholdings. He then asserted that he could recover $1.2 million over the course of his life if his accounts enter pay status, of which the Government could garnish 25%, yielding "double" the sum of an immediate recovery. The Court notes that 25% of $1.2 million is, in fact, equal to $300,000 rather than "double" that amount.

However, the flip side of "community property" is "community debt." The latter term encompasses any "debt contracted or incurred by either or both spouses during marriage which is not a separate debt." N.M.S.A. 1978, § 40-3-9(B). A community debt is satisfied "first from all community property" before other properties are pursued. N.M.S.A. 1978, § 40-3-11(A).

A criminal restitution order is properly thought of as creating a debt. *Cf. Penn. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 557-63 (1990) (discussing restitution orders as debt under the Bankruptcy Code), *superseded on other ground*. The judgment and restitution order against Defendant was imposed during their marriage, and none of the definitions of the term "separate debt" would apply to Defendant's restitution obligations. *See* N.M.S.A. 1798, § 40-3-9(A). The closest analogous provision defines separate debt as "a debt designated as a separate debt of a spouse by a judgment or decree of any court having jurisdiction." *See id.* § 40-3-9(A)(3). However, the judgment against Defendant does not explicitly define his restitution obligation as a "separate debt," and such an express statement is necessary to overcome the presumption that this obligation constitutes community debt. *See Huntington Nat'l Bank v. Sproul*, 116 N.M. 254, 259 (1993). Accordingly, the restitution order against Defendant falls under the umbrella of community debt.

In *United States v. Berger*, the Ninth Circuit considered the Government's efforts to enforce a restitution judgment under the MVRA against real property acquired by the defendant and his wife during their marriage. *See* 574 F.3d 1202, 1203-04 (9th Cir. 2009). The parties agreed that California law applied and that the real property constituted community property under state law. *Id.* at 1205. The Ninth Circuit recognized that the Government was entitled to enforce the judgment against the defendant's "property or rights to property," 18 U.S.C. § 3613(a), and that under California law, "the community estate is liable for a debt incurred by

either spouse before or during marriage, . . . regardless of whether one or both spouses are parties to the debt or to a judgment for the debt," *see Berger*, 574 F.3d at 1205 (quotation omitted). Therefore, the court concluded that the MVRA and state law allowed the Government to enforce the restitution judgment against the community property, notwithstanding the interest in that property held by the defendant's spouse. *Id.* The Court agrees with the *Berger* court's reasoning and concludes that the community property and community debt provisions of New Mexico and California law are sufficiently analogous to warrant the same outcome here.

This conclusion is bolstered by the fact that Sandra Martinez, as a co-defendant in this action, pleaded guilty to a charge of misprision of a felony. *See* (**Doc. 815**). To be sure, Sandra Martinez was ordered to pay separate restitution, and her individual restitution obligations in that respect are capped by the terms of the judgment against her. Nonetheless, given her status as a known participant in and beneficiary of the Metropolitan Courthouse conspiracy, the Court sees no basis for crediting an argument that is essentially an analog to a request for "innocent spouse" relief in the Tax Code context. *Cf. United States v. Melot*, 562 F. App'x 646, 654 (10th Cir. 2014) (unpublished) (rejecting innocent-spouse relief where a defendant "knew or had reason to know of the community income" underlying her co-defendant spouse's tax liability).

Even though Sandra Martinez holds a community property interest in the property in question, that interest does not preclude the Government from garnishing this property in full, subject to the appropriate IRS withholdings. Sandra Martinez's objections on this point are overruled.

## V.    Stay of Garnishment

Defendant stated at the hearing that he intends to appeal any order overruling his objections to the answers to the Writs of Garnishment. The Court recognizes that the objections

here raise issues of law not yet decided by the Tenth Circuit. Moreover, Defendant's two pensions are earning interest in safe and secure investments in the custody of PERA and Nationwide, so there is no disadvantage to any party if the current status quo is maintained on the two pensions pending appeal to the Tenth Circuit. The Court has previously entered an order prohibiting Defendant from attempting to liquidate these pensions and the Court will ensure that the appropriate form of order is entered against PERA and Nationwide ensuring that the current status quo of the two pensions are maintained absent further order from this Court or the Tenth Circuit. Therefore, the Court will stay the execution of the Writs of Garnishment pending the resolution of the expected appeal.

CONCLUSION

For the foregoing reasons, the Court **SUSTAINS IN PART** the Government's objections to the Garnishees' answers and **OVERRULES** Defendant's objections to the same. Accordingly,

- pursuant to the appropriate Writ of Garnishment (**Doc. 941**), Garnishee PERA is directed to dispose of Defendant's interest in the Defined Benefit Retirement Account Accumulated Contributions within its custody, control or possession by paying these funds to the Government, with the exception of the mandatory 20% withholding to be paid to the Internal Revenue Service; and

- pursuant to the appropriate Writ of Garnishment (**Doc. 942**), Garnishee Nationwide is directed to dispose of Defendant's interest in the State of New Mexico § 457(b) Deferred Compensation Plan within its custody, control or possession by paying these funds to the Government, with the exception of the mandatory 20% withholding to be paid to the Internal Revenue Service.

The execution of the Writs of Garnishment is hereby **STAYED** pending the disposition of any subsequently filed appeal.

**SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE